UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JONATHAN MALDON,

                                                Plaintiff,        **COMPLAINT**

      -against-

THE CITY OF NEW YORK, POLICE OFFICER JOHN
YOUNG (tax # 954437), CAPTAIN WILLIAM TOBIN,    Jury Trial Demanded
UNDERCOVER OFFICERS JOHN DOES 1 & 2, POLICE
OFFICERS JOHN DOES 1-5,

                                                Defendants.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1. This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, in which the plaintiff alleges that the City of New York and officers and detectives employed by the New York City Police Department ("NYPD"), violated his rights under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, by subjecting him to an illegal search and seizure, false arrest, a denial of a fair trial, a denial of due process and malicious prosecution. Plaintiff also asserts claims of malicious prosecution and vicarious liability under New York State law. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his New York State law claims of malicious prosecution and

vicarious liability which form part of the same case and controversy as plaintiff's federal claims under Article III of the United States Constitution.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is located in this District and because the incident in question occurred in this District.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## NOTICE OF CLAIM

6. In connection with plaintiff's claims brought pursuant to New York State law, a notice of claim was duly filed with the City of New York within 90 days of the dismissal of the criminal charges filed against plaintiff, more than 30 days have elapsed since such filing, and the City has failed to settle plaintiff's state law claims. Plaintiff also testified at a 50-h hearing.

7. This action is brought within one year and 90 days of the dismissal of the criminal charges filed against plaintiff.

## PARTIES

8. Plaintiff is a resident of the State of New York, County of New York.

9. The City of New York is a municipal corporation organized under the laws of the State of New York.

10. The individual defendants are members of the NYPD. The individual defendants acted under color of state law and within the scope of their employment as members of the NYPD at all relevant times herein. The individual defendants are sued in their individual capacities.

**STATEMENT OF FACTS**

11. Plaintiff is a 37 year-old male who lives with his family in Manhattan. Prior to moving to Manhattan, where plaintiff has resided for 8 years, plaintiff was a resident of Brooklyn. Plaintiff has been employed since 2010 by the New York City Department of Citywide Administrative Services as a custodian in Manhattan Family Court. Plaintiff supports four children on his salary. The arrest at issue is the first and only time that plaintiff has ever been arrested.

12. On October 11, 2017, at approximately 5:00 p.m., while plaintiff was coming out of a store on Tompkins Avenue, between Hancock Street and Jefferson Street, in Brooklyn, after visiting some friends, NYPD Officer John Young, Undercover Officers John Does 1 and 2, and other narcotics officers of Narcotics Borough Brooklyn North, arrested or caused the arrest of plaintiff. At no time did plaintiff violate the law or give the appearance that he had violated the law.

13. When the officers initially made contact with plaintiff, one of the officers ordered plaintiff to, "Turn around." Plaintiff asked the officer, "What happened? " The officer responded, "Turn the fuck around!"

14. An officer then illegally searched plaintiff and found nothing illegal on him. The only things that plaintiff had on him were money, identification, credit cards and a City of New York employee benefits card.

15. During the search, an officer illegally placed his hand down plaintiff's pants and searched plaintiff's genital area on the outside of plaintiff's underwear. While his private area was being searched, plaintiff said in sum and substance, "What is this?" The officer responded, "Shut the fuck-up."

16. The officers arrested plaintiff, handcuffed him excessively tight, and put him in a police van.

17. Plaintiff's arrest was witnessed by numerous people, including people who knew plaintiff such as his young daughter's friends.

18. None of the officers told plaintiff the reason why he was being arrested, or what he was being charged with, despite the fact that he had asked several times. The officers response to plaintiff was "Shut the fuck-up!" Plaintiff, who had never been through anything like this before, was in a state of panic. Plaintiff suffered an asthma attack triggered by the stress of the arrest.

19. During the van ride, plaintiff told an officer that he was suffering an asthma attack from the stress, and the officer responded, "Shut the fuck-up, you're making my dick hurt." Another prisoner in the van who was observing plaintiff told the officers "Yo, this guy look like he is going to die," which made plaintiff even more frightened. As plaintiff explained at his 50-h hearing,

> "All I tried to do is get back to my family. I just wanted to see my mom and my kids and my girl. I just wanted to get home and get out of this situation. I never in my life at all been in that situation. It was like if I starred in a horror film."

20. After the police van was filled with additional prisoners, plaintiff was taken to the 79th Precinct, where the defendant officers falsely charged plaintiff with sale and possession of crack cocaine. No drugs or pre-recorded buy money were found on plaintiff.

21. In the 79th Precinct, plaintiff's whole body was trembling and he felt faint. The police called an ambulance. The EMTs who responded gave plaintiff oxygen and took plaintiff to Brooklyn Hospital, where he spent the night shackled to the bed.

22. The next morning, plaintiff was taken to Brooklyn Central Booking ("BCB"). In BCB, plaintiff was exposed to deplorable and unconstitutional conditions, including extreme cold, a lack of beds and sleeping equipment, overcrowding, and exposure to human waste, insects and garbage. Recently, in *Darnell v. Pineiro*, the United States Court of Appeals for the Second Circuit described the conditions of Brooklyn Central Booking as "alarming and appalling," in potential violation of the Due Process Clause. 849 F.3d 17, 26 (2d Cir. 2017).

23. Captain William Tobin, who was a defendant in *Darnell v. Pineiro*, along with the City of New York, has been the commanding officer of BCB since August 2011 and was in charge of BCB when plaintiff was incarcerated in the facility. Captain Tobin, the City of New York and other high-level municipal officials were aware of the existence of the unlawful conditions in BCB when plaintiff was incarcerated in the facility in October 2017, and were aware that the unlawful conditions have been in existence for well over 25 years. Nevertheless, Captain Tobin, the City of New York and other high-level municipal officials failed to implement adequate remedial measures.

24. While plaintiff was in custody in BCB, the defendant officers maliciously filed false charges of sale and possession of crack cocaine with the Kings County District Attorney's Office, thereby initiating a prosecution against plaintiff.

25. During the late evening of October 12, 2017, well over 24 hours after his arrest, plaintiff was arraigned in Criminal Court, Kings County, on felony charges of sale and possession of crack cocaine.

26. During the arraignment, the prosecution requested bail. Plaintiff was terrified by the prospect of the arraignment judge setting bail and being sent to Rikers Island or another City jail.

27. The arraignment judge, after being informed that plaintiff's family was in the courtroom, and seeing that plaintiff had no criminal record, released plaintiff on his own recognizance.

28. At a subsequent court appearance, the prosecution offered plaintiff the choice of entering a residential drug program or serving a year in jail. This harsh plea offer caused plaintiff to suffer extreme emotional distress. Plaintiff dealt with his emotional distress by relying on the love and support of his family, including his aunt who is a pastor.

29. After plaintiff made additional court appearances, all criminal charges were dismissed on April 16, 2018.

30. Had plaintiff been convicted of a crime, plaintiff, among other things, would have lost his job with the City and his ability to support his family.

31. The criminal case against plaintiff's co-defendant, David Collins - a stranger to plaintiff - was adjourned in contemplation of dismissal ("ACD").

32. As a result of the defendants' actions, plaintiff suffered a loss of liberty, emotional distress, fear, embarrassment, humiliation, an invasion of privacy, damage to his personal and professional reputation, and pain and bruising.

### FIRST CLAIM
### (§ 1983; ILLEGAL SEARCH AND SEZIURE)
(Against the Individual Defendants)

33. Plaintiff repeats the foregoing allegations.

6

34. Defendants, acting under color of state law, stopped, seized, searched and violated plaintiff without legal justification, such as reasonable suspicion or probable cause, in violation of the Fourth Amendment.

35. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

36. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

## (§ 1983; FALSE ARREST)

(Against the Individual Defendants)

37. Plaintiff repeats the foregoing allegations.

38. Defendants, acting under color of state law, arrested plaintiff without probable cause in violation of the Fourth Amendment.

39. Defendants intended to confine the plaintiff, plaintiff was conscious of his confinement, plaintiff did not consent to his confinement, and plaintiff's confinement was not privileged or lawful.

40. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

41. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

### (§ 1983; DENIAL OF A FAIR TRIAL/DUE PROCESS)

(Against the Individual Defendants)

42. Plaintiff repeats the foregoing allegations.

43. Defendants, acting under color of state law, maliciously misrepresented to prosecutors that plaintiff had violated the law, specifically that he sold and possessed illegal narcotics, in violation of the Fair Trial Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.

44. Defendants' conduct resulted in a deprivation of plaintiff's liberty.

45. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

46. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

### (§ 1983; MALICIOUS PROSECUTION)

(Against the Individual Defendants)

47. Plaintiff repeats the foregoing allegations.

48. Defendants, acting under color of state law, violated plaintiff's rights under the Fourth Amendment by maliciously misrepresenting to prosecutors that plaintiff had violated the law and initiating a prosecution against plaintiff which deprived plaintiff of liberty and which eventually terminated in plaintiff's favor.

49. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

50. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### (§ 1983; VIOLATION OF DUE PROCESS)

(Against all Defendants)

51. Plaintiff repeats the foregoing allegations.

52. The Fourteenth Amendment imposes a duty on municipalities and municipal officials and employees to take reasonable measures to ensure that pre-trial detainees are held under safe and humane conditions.

53. The defendants, including the City of New York and Captain William Tobin, breached the aforesaid duty by subjecting plaintiff to conditions in BCB that posed a substantial risk of serious harm, and by failing to take reasonable measures to prevent the harm.

54. The unconstitutional conditions were a policy, practice and/or custom of the City of New York. The unconstitutional conditions, which have existed for well over 25 years, are so persistent, pervasive and widespread that the City had both actual and constructive knowledge of the conditions. Nevertheless, the City failed to implement adequate remedial measures. Second, unconstitutional actions were taken, and unconstitutional decisions were made, regarding the conditions by the City officials who were responsible for establishing final governmental policy with respect to the conditions. Third, the City exhibited deliberate indifference to pre-trial detainees like plaintiff by failing to train its employees on how to maintain safe and humane conditions in BCB.

55. Defendants subjected plaintiff to unconstitutional conditions of confinement in BCB, as described herein, in violation of the Due Process Clause of the Fourteenth Amendment.

56. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

57. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CLAIM

### (§ 1983; FAILURE TO INTERVENE)

(Against the Individual Defendants)

58. Plaintiff repeats the foregoing allegations.

59. Defendants, while acting under color of state law, had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights under the Fourth, Sixth and Fourteenth Amendments, but they failed to fulfill their constitutional obligation to intervene.

60. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

61. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM

### (§ 1983; SUPERVISORY LIABILITY)

(Against the Supervisory Defendants)

62. Plaintiff repeats the foregoing allegations.

63. The supervisory defendants are liable to plaintiff under the Fourth, Sixth and Fourteenth Amendments because they: (a) participated directly in the constitutional violations; (b) failed to remedy the illegal practices at issue after being informed of their existence; (c) created a policy, practice or custom under which the unconstitutional practices occurred, or allowed the continuance of the policy, practice or custom; (d) were grossly negligent in supervising the subordinates who committed the wrongful acts; and/or (e) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

64. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

65. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM

### (MALICIOUS PROSECUTION & VICARIOUS LIABILITY UNDER N.Y. LAW)

(Against All Defendants)

66. Plaintiff repeats the foregoing allegations.

67. Defendants, acting within the scope of their employment as members of the NYPD, maliciously misrepresented to prosecutors that plaintiff had violated the law and initiated a prosecution against plaintiff which terminated in plaintiff's favor.

68. Because the individual defendants were acting within the scope of their employment when they maliciously prosecuted plaintiff, the City of New York is vicariously liable to plaintiff.

69. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

70. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Attorney's fees and costs;

    d. Such other and further relief as the Court may deem just and proper.

DATED: November 15, 2018

_____/s/_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391

IZABEL OLSZOWA GARCIA
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-4734
(646) 239-4330